on Oral Argument, and we'll have 30 minutes aside. Sheppard v. Davis. Mr. Wright. I hope your travels were not too difficult. It will be the last few feet. And they may be going to get worse. Sorry. May it please the court, counsel. Your Honor, this case presents a compelling example of ineffective assistance of trial counsel in the punishment phase of a capital case. Mr. Wright, you're going to need to go ahead and cover the jurisdictional issues, or issue first. Yes, Your Honor. And of course, as you well know, you have the burden of establishing jurisdiction on appeal. Yes, Your Honor. The issue raised by the state in their letter on the 13th concerns the issue that's before the Supreme Court now in Bannister v. Davis, and that is whether and under what circumstances a timely Rule 59e motion should be recharacterized as a second or successive habeas petition under Gonzales v. Crosby. And, Your Honor, we first believe that it's premature to decide this case until the Supreme Court rules on Bannister. I can tell you that almost always, I won't use the word always, but certainly generally our court goes ahead and follows whatever the Fifth Circuit precedent is, and we all know what that is. I'm sure you'd like to see that changed. But normally we do not wait. I'll just tell you one of the reasons that we don't is that more often than you might think, the Supreme Court takes a case and then decides the case in a different way or on some other issue or there's some kind of a waiver or something else happens such that the issue doesn't get decided. So as of now, we are bound by our existing precedent. You can certainly request that we wait, and we understand why you would do that. Thank you, Your Honor. And the second non-substantive point there is that we would request leave of the court to brief this issue more fully. As you know, it came up fairly late in the case, and we've been studying the authorities, but we don't feel like we have an authoritative answer at this point. Okay. Well, if we were to give you leave to file an additional letter of briefs, I think the letter of briefs are simpler when it's just on one issue like this. You don't have to file a formal brief. How many single-space pages would you like to have to give additional briefing on that issue? Well, I don't want to be greedy, and I know in the history of this case that the longest one I've seen was six single-space pages, but I think on this issue I would request ten. All right. Well, we'll give you ten, and you can have until a week from Monday, whatever that date is. I believe that's the 30th. 30th. Thank you, Your Honor. And when you are doing that briefing, would you please read the McDaniels case in full because you miscited it? You said that in that case we ruled that if any part of the 59E was proper, then the whole appeal was fine. That isn't at all what we ruled. We ruled that the 59E was proper as to the failure to grant an evidentiary hearing, and we considered that, but we dismissed the rest of the case. So if we were to conclude that you have four issues here, and on one of them, for example, you did file a proper procedural, if we want to call it that, 59E, well, we'd only have jurisdiction over that if we're following our precedent and not, you know, weighing on banister and all that. I'm sorry, Your Honor, for that mistake, and we'll be more careful in our next filing. So is it your argument, speaking generally, I'm not trying to put words in your mouth, that it's not a successive because it raised procedural points rather than substantive? I think there's a more fundamental argument, and that's part of what we're still sorting through, the cases from the other circuits and that sort of thing. But I think the more important point are the differences between a Rule 59 motion and a Rule 60 motion. And what I mean there, Gonzales, as the Court knows, was a Rule 60B case, and Gonzales held that Rule 60 motion seeks to set aside a judgment after the time to appeal has expired and the judgment has become final. And by contrast, a timely Rule 59E motion does not attack a final judgment. And, Your Honor, here I'm citing United States v. Ibarra, 502 U.S. 1, that a timely Rule 59E motion in a civil case renders an otherwise final decision of a district court not final until the district court rules. And we believe that's a significant difference between 59 and 60. We're also examining the practical issue of what the holding in Williams would mean more broadly, and that is, must a litigant in a civil case elect between a Rule 59E motion and an appeal? And what I mean by that is, as the Court noted in Williams, the filing of a 59E motion voids the notice of appeal, and that's consistent with Federal Rule of Appellate Procedure 4 that requires a party to refile a notice of appeal after the Court's ruling on a Rule 59E motion if the notice of appeal had been filed previously. So the question — Well, I think the problem here is that you've got potentially a conflict between the statute and the rule, and the statute's always going to govern. Obviously, we can't have a rule that says you can never file an appeal. So if the effect of applying the rules of appellate procedure and civil procedure were to cause you to never be able to appeal, then obviously that wouldn't work. But that isn't, I don't think, what Williams is saying. It's saying that 59E doesn't delay your filing of the notice of appeal. If you file the notice of appeal and we dismissed it, that would be on us. Then it wouldn't be on you. So I think the issue that the Supreme Court will have to address in Bannister, although I agree with Judge Smith, they do what they do, but they did limit it to one issue, and that was essentially how far does Gonzales go in a 59E. And I think it's a little different than your typical 59E because of this issue of successive and not being able to just keeping on keeping on the way a lot of lawyers try to do with 59Es in a usual case. Is that fair? I think so. I'll be honest with you. My head is still spinning a little bit with all of the issues that are roiling around this, and I'm still working through it in my own mind, but I think I understand your point, Your Honor. And it's the statute versus rule, and I understand that point. And do you agree that if the rule conflicts with the statute, the statute would govern? Certainly that's my understanding of the law on that issue. And, Your Honor, I think the issue about whether the 59E motion that Ms. Shepard filed was a true 59E motion under Williams, I do think we pointed out in our letter the points where we were addressing the integrity of the proceeding and the standard that the court was using. I think what makes it a little more difficult generally, though, is that a Rule 59E motion by definition is a motion to alter or amend the judgment. And one of the issues that I'm examining is what is the scope of that and how does that play into this analysis about whether a 59E motion is a true 59E motion or not. And I will tell the court candidly I don't have in my own mind a final answer on that. Okay. Are you saying it may not have been a motion to alter or amend? No. I'm saying that certainly, as the State pointed out, there was relief requested that would have altered or amended the judgment. But the nature of the arguments went to the procedure and the framework, the analytical framework that the district court used. I mean, the problem that I saw with your argument, and I appreciate that you're going to file more briefing and I'll keep an open mind to it because this is a very, very critical point, but the problem that struck me is you could make almost anything procedural in that situation with the argument you were making, because what you were arguing goes to the heart of what the judge ruled. It's not, well, limitations bars me from considering this, or like in McDaniel's, we're not going to have an evidentiary hearing, which really has nothing to do with the merits directly. I mean, I can have an evidentiary hearing or I cannot have an evidentiary hearing and still get the merits wrong. So the purely procedural strikes me as being something that prevents you from getting to the core, whereas here the judge addressed the core. You may not have liked how the judge addressed the core. You may think the judge made mistakes in addressing the core, but she addressed the core. So how can that be something that evades Williams, assuming Arguendo-Williams is correct? That's what I'm searching and analyzing. Okay. That's fair. And I will definitely, and I know all three of us, keep an open mind because, you know, this is a very critical point. If we're just not even going to get to the merits of your appeal, we need to be sure that's the right result under the law. Yes. If you would make a note of one thing, you have a lot of things to address in your 10 pages. One thing I'd like you to address is to take a look at the long paragraph on page 33 of the brief that you filed in June of 2018 and just tell us whether that paragraph is consistent with the position you're taking now on what I'll generally call the substance versus procedural distinction insofar as it concerns jurisdiction. You don't need to do that now. I'm just alerting you that you need to look at that to see whether it's consistent. It's a description of the motion to alter or amend that you included on page 33. Okay. I understand. Is that a reply brief? No, no. It was your June 18th. It was filed June 12th, excuse me, of 2018. June 12th? Yes. Okay. Thank you, Your Honor. I'd like to hear your arguments on the merits, too, since we're unlikely to have another oral argument, however we rule on the 1598. So if you want to address what I see as the main issue, which was, you know, your original briefing on the question of the ineffective assistance of counsel for failure to thoroughly review the mitigating circumstances issue. Thank you, Your Honor. I'll proceed to that. The issue here when you look at the record, and the record is very clear and undisputed, that trial counsel wholly failed to conduct the necessary investigation to present a constitutionally sufficient mitigation case. And there are really two components to that. First of all, counsel failed to investigate the facts and the fact witnesses, including members of Ms. Shepard's family, who could have provided highly relevant probative evidence of her family personal and medical history. And second concerns the experts. And this one I will spend a little more time on because this issue is presented in such a way that may be unusual, perhaps a little bit in its factual presentation. And I'll just go into that right now. The sole expert at trial was Dr. Priscilla Ray, who was and is a psychiatrist in Houston. She was appointed by the court. Trial counsel Charles Brown requested that the court appoint her at court expense, and she was appointed. And what Attorney Brown asked her to examine, he asked her to examine Ms. Shepard's competency and her sanity, and he asked her to opine on whether Ms. Shepard was likely to be influenced by men who were in a position to be abusive. Now, Dr. Ray was not asked, and we know this because she filed an affidavit in state habeas where she provided extensive testimony on all of these points. Mr. Brown did not ask Dr. Ray to evaluate Ms. Shepard with any psychiatric diagnosis, and so she did not do so. She testified that her clinical evaluation was not intended as a medically diagnostic interview and that she didn't engage in clinical diagnostic inquiries as she typically would perform. She also testified that if Mr. Brown had requested that she perform a medical diagnosis for Ms. Shepard, she was qualified and capable of doing so at that time. She is a licensed psychiatrist with an active practice, and she has regularly performed medical psychiatric diagnoses of her patients since 1985. Critical directly to the issues in the mitigation case, Mr. Brown did not ask Dr. Ray to provide a diagnosis regarding whether Ms. Shepard suffered from post-traumatic stress disorder or any other trauma-related psychoses. Dr. Ray testified that if she had been asked to diagnose whether Ms. Shepard suffered from PTSD or other trauma-related psychoses, she was qualified and able to do so and had been doing that in her clinical practice since 1984. Because of the limited nature of the referral... I'll tell you the concern I have with this is kind of where you draw the line. I haven't reviewed statistics on this, but just in my experience on this court, maybe half the death penalty cases, if not more, they find more evidence that could have been brought up and raise that somewhere in the federal habeas process, maybe even the state habeas process. And so it's sort of always true, it seems to me, that you could have found more. So where do we draw the line? Because we've had lawyers that just did nothing. This lawyer did not do nothing. Maybe didn't do enough, in your view. I get that. But it didn't do nothing, and yet didn't do everything. So where is that line between nothing and everything? Well, I think in this case, the lawyer's conduct is much closer to nothing than it is to something. And what I mean when I say that is that he was aware before trial that there was a history of depression in Ms. Shepard's family. He didn't seek any expert testimony to address any mental issues other than the very limited referral that Dr. Ray provided. He was aware that there were issues, and that would be a red flag under the Supreme Court cases concerning Strickland. He didn't follow up. Now what we found in state habeas was we retained Dr. Myla Young, a neuropsychologist, and Dr. Rebecca Bradley, a clinical psychologist whose expertise is in treating veterans and others with PTSD and trauma. They examined Ms. Shepard in the appropriate clinical setting, and they concluded that she did suffer from all of these disorders. Mr. Brown knew there was more out there. It wasn't just that he got a limited answer from Dr. Ray. What he asked her was very limited, and it was so limited, it's curious because his motion that he filed with the state district court said he wanted Dr. Ray to be appointed to assist him in the punishment phase, and that he didn't follow up with information that he already had to get her to provide a report on a clinical psychiatric interview. So it may be true that you can always find more, and I understand the limitations on appointed counsel in state capital cases, but when the evidence, when the red flags are out there and trial counsel sees them, Strickland and cases construing it require them to follow up. So how would you announce the rule that would govern this kind of situation? I know you think it's close to nothing. I think he did something, but not everything. So I don't think there's going to be a lot of doubt about that he didn't do everything. But he did do something. How would you articulate it? If you were writing the sentence in the opinion you want us to write, how would you articulate that? Well, I think the way I would articulate it is that the investigation, because of the information that was known to trial counsel from the very beginning of the case, issues of domestic violence, sexual abuse, et cetera, from the very first meeting Ms. Shepard had with her counsel and counsel's investigator, they had knowledge of these issues and they did not follow up, they did not develop any testimony on those issues. And Judge Atlas dealt with it in some detail in her summary judgment opinion. She found that counsel's performance was deficient and she also found that Ms. Shepard was prejudiced by it. But we don't give any deference to that. I mean, we may as people, but not technically, right? Well, my understanding is under AEDPA that findings of fact are reviewed for clear error. But not? Not in conclusions of law de novo. Well, but it was a summary judgment. I mean, in other words, I'm talking about reviewing Judge Atlas' view. If Judge Atlas is wrong about giving deference to the state court, then it's a de novo review in our court, right? I think it comes down to a legal question. Okay. So I believe it is de novo. So, I mean, if we see the world a little differently than Judge Atlas, we don't have to give any deference to her view on that. Again, maybe as people we do certainly respect Judge Atlas a great deal. I'm just saying, technically, what is our requirement? It's not the same thing as she did a bench trial and we have to accept her findings of fact unless they're clearly erroneous, right? I agree with that. Okay. And I wanted to turn to Judge Atlas' opinion on these points because I think it highlights the issue with what is the appropriate standard going forward since Wilson v. Sellers and Langley v. Prince because reading Judge Atlas' summary judgment opinion, she very clearly states, for example, that she was unable, because of the extremely deferential standards, she was unable to find that the Court of Criminal Appeals finding that the evidence in habeas was cumulative. She was unable to find that was unreasonable. She also referred to that same standard, DeNeal v. Puckett, in that line of cases with respect to deficient performance and prejudice. She wrote in detail her views, and she called them findings with respect to deficient performance and prejudice, her view that both of those had been established but that the standard of review that was applicable did not permit her to grant relief. And first of all, we believe in our position, as we stated in our brief, is that she called it a close question under the existing law, and we think that's probably right or at least not plainly wrong, but Wilson v. Sellers, we believe, changes the landscape on that in a significant way. How do you ‑‑ and I've read your reply, but if you want to address the State's argument that even applying de novo review to prejudice, you don't get there. So even if we accept your Wilson argument, you would still lose on prejudice, according to the State. Well, I disagree on the cases on prejudice. I think you do get there. That one juror might have ruled ‑‑ I mean, it's a little bit of a difficult standard because, you know, a jury might do anything, but my experience with jurors is they're trying very hard to follow the law. As a State court judge, I didn't do death penalty cases as a civil district judge, but, again, my experience is they're trying very hard to follow the law, and why is it that somebody having depression would be mitigating of the kind of murder that was committed here, which was something really planned out for money, not any, you know, anger or this person did me wrong or I thought that I was in self‑defense or any of those kinds of arguments. It was really just trying to get money. How does depression mitigate that? Well, first of all, perhaps Mr. Dickerson, the co‑defendant, was after money or after the car, but I believe Ms. Shepherd's statement would not ‑‑ wouldn't support that. Well, the jury didn't accept that. I mean, they certainly knew that argument, that she was being cowered by Dickerson and whatever. There were some facts that were inconsistent with that, the conduct the day before with the other woman and so on. Again, I'm not ‑‑ I'm sort of asking this as a devil's advocate, if you will, not necessarily that I agree with it or disagree with it. I'm just asking that. How can we say that these findings of, you know, mental difficulties are so clearly mitigating that we should undo all of the prior courts? Well, I think the answer, Your Honor, is found in the line of cases, Williams, Wiggins, Rompilla, Porter. The question of what is mitigating evidence is a very broad question and it's broad for a reason, because the jury is being asked a very broad question and the details of the particular defendant's life, including medical conditions, family conditions, et cetera, those are all going to be under the Supreme Court's precedence and in that line of cases, that information is always going to be relevant. In particular, I believe in Rompilla, the court said evidence of cognitive faculties is particularly relevant with respect to culpability in the punishment phase. And even Dr. Ray, in her five‑page report, talked about how Ms. Sheppard was susceptible to influence of men who might control or abuse her. And wasn't that the biggest core argument here, that she was kind of just cowering at Dickerson's commands? And so wouldn't Ray's evidence be the most critical on that? And if that didn't persuade the jury, then how would something more tangential to the core of the argument in this case be influential? Well, I don't know if it was the most core issue, but Dr. Ray only submitted a five‑page report. She didn't even do a psychiatric interview. She stated a conclusion in a summary paragraph. And, Your Honor, I see my— No, you can go ahead. She didn't perform a psychiatric interview. She didn't put any meat on the bones, if you will, about what did that mean. I think it was much more than just that she was susceptible to influence, that she had dissociative disorder. She had PTSD from early childhood. These experts, Dr. Young, Dr. Bradley, examined her and documented all that. So Dr. Ray's statement in her five‑page report, that was not even a psychiatric interview, I don't think gave the jury much to work with. And Judge Atlas addressed that in her report, that there was much more information that the jury could have had that could have helped them put all of this in context and helped them understand it, and they just didn't get it. Am I correct that one of her major problems, the defendant's major problems, was simply low IQ, and that that just didn't get picked up or looked for at all? That's correct. What Dr. Young said was that she was functioning at the level of a 14‑year‑old. Yeah, I mean, and that simply wasn't even picked up anywhere in this. I don't believe so. In fact, Mr. Brown, when he was arguing his closing argument, with respect to the issues that Dr. Ray presented in her report, he admitted in the state habeas hearing that he said just via report he didn't even draw it out for the jury or try to make an argument from it. On the question of prejudice, do you agree with me that the test is whether the jury would have reached a different result, not just that it could have, but that it would have? Well, I don't want to slice it too fine, Your Honor, but I think it's got to be more than just a possibility. But if I'm recalling the cases correctly, there has to be a substantial possibility, and I will look at that and see if I can give you a better answer on rebuttal. Okay. We took a lot of your time with the jurisdictional issue, and you have saved your full time for rebuttal. If there's anything that you haven't covered that you'd like to cover, you can have two more minutes to do that. Thank you, Your Honor. I will do that. I want to focus the court for a moment on the opinion of the Texas Court of Criminal Appeals in this case. It was a very perfunctory opinion. It did not even address or acknowledge most of the evidence that was presented in State habeas, and it was based on an incomplete analysis of the record because of that. It also failed to acknowledge or analyze the limited scope of Dr. Ray's report. And for that reason, we believe, and we've argued in our briefs, that the CCA's opinion, which under Wilson v. Sellers, is the final word on ineffective assistance, that it is plainly unreasonable. They didn't do their job in the mitigation. They didn't consider all the evidence of State habeas and from the trial court, and they didn't cover it. There was so much more that they didn't address or write on. But you still have to show that every fair-minded jurist would agree that there was prejudice here. Is that right? Well, Your Honor, I don't mean to be uncooperative, but that's not ringing in my ear as the exact test, and I would like to look at that. Well, let me just refer you, because it was a good recitation of the test. There's a panel opinion. Judge Haynes was on the panel. The petitioner's name is spelled A-D-E-K-E-Y-E. I don't know how to pronounce that, versus Davis, September 13th. Let me just refer you to that, because it has a good two, three actually full paragraphs explaining how tough the standard is, and it includes the statement that you have to show that every fair-minded jurist would agree that there was prejudice. Thank you, Your Honor. I will look at that. The number on that is 1720040. 20040. Okay. Thank you, Your Honor. Thank you, and you've saved your full time for rebuttal. Thanks. Mr. Frederick? I hope you didn't have trouble getting here either. No, not even the last five feet. They were okay. I made it. I remembered my umbrella. Thank you, Judge Smith, and may it please the Court, this Court lacks jurisdiction because Ms. Shepard's notice of appeal was untimely. Under Williams v. Thaler, her motion to alter or amend addressed squarely the merits of the district court's decision rejecting her federal habeas claims, and so it was not a proper Rule 59e motion. Rather, it was a second or successive application as defined by Gonzalez v. Thaler. Let me ask you, you know, Judge Smith addressed our normal rule about we follow our precedent unless and until the Supreme Court says otherwise. Is that a little different in a death penalty case? It seems potentially odd to dismiss a case for want of appellate jurisdiction, that if nothing further happened would mean Ms. Shepard might be executed before the Supreme Court rules, perhaps, that we did have jurisdiction. Does that a bit cause you to catch your breath? Because that's a little different, as bad as leaving someone in prison who shouldn't be there, as bad as a lot of other things are, at least they're not quite as final as an execution is. I understand, and we absolutely recognize the stakes of this case. They couldn't be higher. It does not cause me any serious concern for one main reason, and that is that if this Court follows its binding precedent and dismisses for lack of jurisdiction, I would assume that Ms. Shepard, like many other federal habeas petitioners who are anticipating a favorable change in the law, would simply file her certiorari petition, and then it's hard to imagine that if the Court decided Bannister in a way favorable to her that it wouldn't grant vacate and remand to this Court for consideration on the merits. So if there were... But isn't that kind of funny for us to just hope the Supreme Court gets it right? You know, I kind of view my role as I'm the last place this person's coming, recognizing, of course, that they can go to the Supreme Court and the Supreme Court may take it and the Supreme Court can reverse what my Court did. I get all that. But isn't that just more delaying the case? I mean, in other words, if we held the case until Bannister was decided, Bannister said, you know, Fifth Circuit got it totally right, then we would be ready to rule on the merits of the habeas and move forward. If, on the other hand, they said you got it wrong, I mean, we wouldn't be in a position to just dismiss it. If they said you got it wrong, we would be in a position to rule on the merits. Instead, if they have to GVR, it takes a while for that to come back. We have to wait for this and that, and they have 25 days and whatever, whatever. So there's a delay in getting back to us. So why would it not make more sense to hold it? Because either way the Supreme Court goes, we can move very promptly upon their ruling, either by dismissing or by ruling on the merits. I understand, and I think I'd have to say my answer is limited because my understanding of just the basic jurisdictional rule is that if the court lacks jurisdiction, there is nothing left to do but announce the fact and dismiss. However, the court does, of course, have jurisdiction to determine its own jurisdiction, and how quickly and by what process the court determines its jurisdiction is really not anything that I can help the court with. So if it were to happen that it just took that long to resolve the question, then I don't necessarily see any problem, but I don't think I can tell the court that it can exercise jurisdiction by, say, staying the appeal or doing anything else that would be construed as an exercise of jurisdiction. Well, I mean, if somebody's challenging our appellate jurisdiction, why can't we stay determination of that? That's still not claiming any more jurisdiction than the jurisdiction to decide jurisdiction, which we clearly have. We're just saying we ain't going to decide it today. Well, let me be clear. I'm not telling the court that it can't do anything. I just don't. That's okay. I mean, you can tell us that. Well, I just can't offer any specific authority that, in my understanding, would allow the court to make any order officially staying or postponing the case. Now, of course, my colleagues, they can file another brief on the question, and I suppose it's possible the court will determine it has jurisdiction. As I read Williams, I don't think it's an open question. But to get back to your original point, we certainly recognize that this is a very high-stakes case for Ms. Shepard. I would point out in that regard that I think to push back a bit on any appearance of unfairness, very generally on Rule 59e motions, I think there is still a mechanism available for a habeas petitioner to preserve both her right to appeal to this court and to seek reconsideration by the district court. Nothing presents a habeas petitioner from filing a notice of appeal, a timely notice of appeal, and then filing a Rule 59e motion either right before, simultaneously with, or right after. And I believe that Rule 4 is fairly accommodating in how the courts will construe the premature notice of appeal or, you know, the notice of appeal that arguably should have been filed. But, I mean, you'll agree in every other civil case, it's not a habeas case, if this was a car wreck and you were appealing and they had filed a 59e that was a complete regurgitation of everything they'd said in court, nothing new, just, you know, can't stand that they lost, that would still delay the time for appeal and we would have all the jurisdiction in the world once the 59e was denied and they appealed. Just not a habeas case, just a regular car wreck, whatever. So the reason this is different, as I appreciate it, is because there's a conflict with the statute if we are to rule that you can just keep filing what is deemed a successive habeas, whatever you want to call it, that that's the problem, right? Right. So, to me, the Rule 4 and the Rule 5, I mean, that's just not really in play. The question is, is this a successive application? And the fact is, if it is, we would have found it unripe until we rule on the original habeas. That's what we do when somebody files so we have a habeas that's decided by the district court on appeal to the Fifth Circuit and then somebody comes up with a new, totally new, which is no question it's successive, totally new claim, and they file an application for successive, we dismiss those as unripe. So really we'd be saying you can really never file a 59e that's not procedural unless and until your first appeal is done. And then it's not a 59e anymore because of the timing. So does that make any sense? It does, and I think the limited point that I was making is that as far as that first, the initial federal habeas petition, there is a clear mechanism to protect one's right to appeal. And you're absolutely correct if a petitioner comes in whenever it is and files what purports to be, well, it could just be a new habeas petition, and in that case it would be very easy. But if they file a Rule 59 that either raises an entirely new claim or completely rehashes on the merits an old claim, then that's still, you're correct, going to appropriately be routed through the same channels that a subsequent habeas petition would be. But there's nothing about that that affects the petitioner's right to protect her right to appeal. I think Your Honor brings up another point that's relevant to the jurisdictional argument that my colleagues are making, and that is they are attempting, as I understand it, to kind of portray the application of 2254D at the relitigation bar as some kind of a procedural step. And I don't think that can possibly be right for two reasons. One is that in Gonzalez, the Supreme Court specifically took that on when it defined what adjudication on the merits means for purposes, in that case, of the Rule 60B motion. And in the opinion, it's either Note 4 or Note 5, I can't remember, but it says on the merits means a decision whether or not this petitioner is entitled to relief under 2254. And so I say that because I don't think it's possible to separate the application of 2254 and make it somehow not part of the merits. I mean, that is merits adjudication in federal habeas litigation. And the second point is that if their argument were correct, then in many, if not most, federal habeas cases, it would open the door to an endless series of so-called Rule 59 motions because most of the time, the application of 2254 means the relitigation bar is in place and we're not going any further, relief denied. And so if that were viewed as merely a procedural move, then it would leave a lot of federal habeas. Well, saying the judge got the law wrong doesn't strike me as procedural in the sense that it's meant in Gonzales because, as you say, that's usually what people are claiming, particularly in a habeas case because in a habeas case, you typically don't have a state habeas. You don't typically have the federal district judge making a bunch of factual determinations. Here and there, you might, but the bulk of them, either de novo review the state court ruling or deferential review the state court ruling but not starting over. Correct, and I think here, I appreciate that in some cases there are complications that arise and hard calls to make, but in this particular case, it's really kind of a heartland merits attack on a district court's rejection of federal habeas relief because it goes directly to the merits of every claim. If I could... So you'll have until October 7th to respond at similar length to the letter that Mr. Wright will be filing. Thank you, Your Honor. Now, if the court did determine that it had jurisdiction, it should affirm the district court on every claim. And I want to start with what I view as the main claim, which is the punishment phase ineffective assistance claim. That claim is subject to AEDPA's relitigation bar because it was adjudicated on the merits in state court on both prongs. I would like, if I could, to start with prejudice because I think that provides the most straightforward way to resolve that particular claim. And there are two reasons that the prejudice argument can't succeed here. The first is that it's very simple. Ms. Shepard has failed to carry her burden. As this court has repeatedly said, most recently in, I think it's Atticke, but the recent case that Judge Smith cited, the burden to prove prejudice requires the petitioner to specifically allege how new evidence... well, what new evidence investigation would have uncovered and specifically how that new evidence would have altered the outcome. If you look at Ms. Shepard's briefs on appeal, they do not explain how this new evidence introduced in state habeas would have altered the outcome. At pages 53 to 54 of their opening brief, they say it would have made it a markedly different case, a much richer description, might well have influenced the jury's appraisal of Shepard's culpability. And then in their reply brief on page 23, they say it would have made the new evidence was, quote, different in kind and scope from any evidence offered at trial. Under the governing standard, I do not believe that that is sufficient even to raise the prejudice issue because they don't explain how this new evidence specifically would have factored into the jury's deliberation. The second reason is, in any event, it was not unreasonable for the state court to find that Ms. Shepard had not proved prejudice. And I think that would be true even on de novo review. But here, since we're looking at it under AEDPA, we have to say, is there any reasonable basis to find that she was not prejudiced? And I think that – Well, but in your brief, you conceded that they didn't reach the prejudice, so we're analyzing that de novo. What our brief – I will admit our brief was ambiguous on this point. I think what we said was it looks like the district court didn't adjudicate it. But if the court does determine, like the district court, that – No, the TCCA didn't. Well, the district court decided that the TCCA did address prejudice on the merits. And I think we took what I admit is an ambivalent position. If you look, though, I think the only reasonable conclusion to draw from the CCA's decision is that it had to address prejudice. And the reason is that if you look back at the state habeas trial court's conclusions and findings, there's no specific mention of prejudice in all of the particular findings of fact and the one conclusion of law. Of course, they said we recommend you grant relief, so they implicitly and necessarily found prejudice. And I think it has to follow that when the CCA disagreed with that analysis and rejected every one of those factual findings and the one legal conclusion, it necessarily – I mean, you expressly said that they didn't do the Strickland analysis. CCA did not find deficient performance. It did not analyze prejudice. And therefore, we examine this element of the Strickland claim de novo. And there's a footnote where we caveat that statement and say, but in the event, because – Okay. I mean, you say the district court found differently, but, I mean, whatever. Your brief says what it says. But to me, it read as if you were conceding it's de novo reviews. It wouldn't matter to look at AEDPA deference when we're doing something de novo, right? Of course. Okay. And I don't deny that our brief says what it says. As I looked at the specific rulings of the state court, I think the district court was correct. And my understanding is that the AEDPA standard of review can't be waived. So if we were mistaken, I think we're still entitled to the benefit of 2254D as long as it is true that the CCA adjudicated the claim. But to go back to the claim itself, there are two reasons, two main reasons why she can't prove prejudice. And I think her claim, realistically, it focuses on the medical experts who were not discovered. Because there are two other categories. There are family members, including Ms. Shepard herself. Counsel had completely legitimate reasons for not calling those people, including Ms. Shepard, that are explained in the record. The second category is there are some lay witnesses, family friends, people who knew Ms. Shepard. And when you look at the testimony they offered, it is absolutely cumulative. There's not really any argument about it. Some of it not particularly useful. But her main focus, reasonably so, is on the three experts. And even if we focus on those, the problem is that there's no connection between the specific diagnoses that those experts made and the facts of the crime and the circumstances of the crime. In other words, what they add to the evidence that was already before the jury is an expert's conclusion. She has PTSD. She has major depression. She has dissociative disorder. But when you think about how would the jury have processed that, given all the information that it already had, she can't show a reasonable probability or a substantial probability that the outcome would have been different. And the main reason is that the jury already had Dr. Ray's report in front of it. It was admitted into evidence. And Dr. Ray, she established all of the essential facts of the mitigation case that Ms. Shepard offers. I thought that was what we're here to talk about. I thought that she didn't because she wasn't hired to do that. And the evidence that came up later, particularly the level of her IQ, which is challenged, that that simply wasn't covered by Dr. Ray. I thought that's the whole reason we've gathered here today. Well, Your Honor is absolutely correct, and I stand corrected. Dr. Ray did not address intellectual functioning. However, I still maintain that her report established every essential element of the mitigation case because she told the jury that Shepard's parents divorced at a young age. She was raised by her grandmother, three kids by age 19 with three different men, two of which it seems like were the product of statutory rape, horrible sexual abuse at ages three to five. She lived on the streets. She was raped by a man at knife point. She had to seek shelter at a home for runaway youth. She ran from her common-law husband and sought shelter at a home for battered women. The father of her third child beat her repeatedly, threatened to kill her if she left. And then also, beyond those facts about her terrible background, Dr. Ray's report included Shepard's claim that at the time of the offense, James Dickerson threatened her, said, I will kill you and your baby if you don't go commit this crime with me. And Dr. Ray determined that based on her examination, she thought that Ms. Shepard would be susceptible to threats by men in a position to abuse her and would be more easily influenced in that situation. That is, with or without evidence of intellectual functioning, that's the core of her mitigation case. And the problem for her prejudice argument is that the diagnosis itself doesn't add anything material and it doesn't add anything that would have altered the jury's perception of her claim. There are two reasons for that. There are basically two ways that mitigation could go based on her background. One is you could offer these diagnoses as an explanation for her conduct at the time of the offense. This was a product of her psychological conditions. Look, we have an expert opinion saying that she suffers from them. The main problem with that, though, is that to the extent they go to the duress theory, that theory was subject to conflicting testimony and the jury already rejected it. They had it. The other problem is it's just not consistent with the evidence because James Dickerson, her co-murderer, he was her brother's boyfriend. There's no basis to think that this was a situation that had the potential for the kind of abuse that she had suffered. So there's just not really a connection between those. The other problem is her confession, which was published to the jury and introduced in evidence, contains no statement that she was threatened by James Dickerson. The other problem with the theory of duress based on a psychological evaluation is that there was substantial evidence before the jury that the offense was planned and thought out. It was not a spontaneous exercise of poor judgment. Corey Jordan, who ended up calling the police after he heard about the crime, he had heard Shepard and Dickerson talking about it at Shepard's brother's apartment. There was a previous attempt that the jury heard about and that Shepard acknowledged the day before where they tried to rob some other woman in the parking lot. And so that leaves a serious question about how could the jury have processed this new diagnostic information in a way that was favorable to Ms. Shepard. I don't think it could have because what that leaves you with is that she's predisposed in some sense to acts of violence. And it might still have mitigating effects if this were a different crime. If she had killed her common law husband because he was beating her or if she had gotten caught up with a man who was abusing her, like there was testimony that she participated in a drive-by shooting. If she were on trial for that, you could reasonably think, well, of course, he beat her. Of course she's going to go along with it. But here it's a random murder of a stranger that seems totally pointless. And so where is the connection between these mental defects or psychological conditions? And to put it in the terms that some of the experts used, one said, well, this would make her prone to robot-like states. That doesn't really do anything because there's no evidence that, for instance, she was wandering around the parking lot with blood on her hands not knowing where she was. PTSD, if there were some indication that she had been triggered, like a veteran with PTSD, if you hear a loud noise, you may get triggered and you may react in a way that's unconscious. So how would you articulate? I asked your opponent about the rule because I think, and this is just me, I can only speak for myself, I think we're somewhere between nothing and everything. So how would you articulate the rule? The rule on prejudice, I think, is very easy to articulate. I would just build on what this court repeated again in Attike and say you have to show specifically what would you have produced and how would it have changed the jury's deliberation. And I don't think it's hard to imagine how that could work in different circumstances. As far as the deficient performance, which I think goes more to your point of we're between nothing and everything, we have to start with the presumption that the counsel performed in a constitutionally adequate manner. And here I think we have evidence that counsel did conduct, he conducted a reasonably thorough investigation. He hired an investigator. There's a report in the record where the investigator discusses all of the family members and all of the other people he interviewed. This investigation included Dr. Ray. The only thing that's really missing is a very specific psychological expert evaluation. And so I think the rule that should control here is if counsel conducted a reasonable explanation based on the information available to him, then any decision about what kind of mitigation case to put on and what further evidence to pursue, if any, should be presumed to be an exercise of strategic judgment. And I think that's what we have here, because we know from counsel's testimony in State Habeas, he made a decision. He did not like the duress theory. He thought that was a loser. He had seen James Dickerson's trial. He had seen Shepard's statements. His decision was I am going to pursue a mitigation strategy based on age and based on her background. And so in this record, the investigation he conducted was adequate to put on that case. Let me ask you a question. Yes. I don't fully understand your argument about the limited relevance or no relevance of the fact that she had this 14-year-old intellectual capability. Would your argument be the same if they had done that same test, whatever it was that revealed that, and instead of 14, it was 10 or 8? The answer is yes, unless there were. That's what I thought. Your answer is you would be making exactly the same argument if that evidence showed that this woman had the intellectual functioning of an 8- or a 10-year-old. The only qualification I would add is unless there were an Atkins claim. If there were a plausible argument that she was intellectually disabled for purposes of Atkins, I would not be making the same argument. And they've never raised Atkins. Correct. But the reason that I think the court should consider the evidence of the evidence that they already had is because there was no doubt that Ms. Shepard had had problems growing up. She was not a great student. She had to drop out in 10th grade because she was pregnant. She tried to get an education, but she struggled. The mere fact that an expert assigns some age of intellectual function I don't think adds anything to these diagnoses of PTSD and dissociative disorder. And perhaps I'm wrong, but I don't see anything in the record or in the reports that would allow me to say that it adds something different. If I could briefly, unless the court has further questions, if I could move briefly to the Batson claim. The review of the Batson claim, which was adjudicated on direct appeal and is therefore subject to the relitigation bar. The review of the Batson ruling is essentially review of the state's court's findings, finding that the prosecution's race neutral reasons were valid. That is a factual determination subject to section 2254 E1, according to Miller L versus Dredke. And that makes sense because the basic question in Batson is, why did you strike the juror? And the question for the judge is, did you do it because of race? And that question is uniquely within the province of the trial judge because the Supreme Court's been clear that the assessment of the prosecutor's credibility is often a critical factor and often the best evidence of whether the Batson claim did succeed. Well, and the trial judge can also see the jurors and see this hello and how that looked. Precisely. I had a case once where a juror, a prospective juror, yawned every time I talked. And this was when I was a lawyer. And the opposing counsel, the same juror, smiled at. So it didn't seem like the right juror for me. That's exactly right because it's ultimately you're trying to pick jurors who are favorable. And whether they'll be fair and impartial, that may not be enough. And so here I just wanted to touch on it briefly because I don't think she can possibly overcome the state court's rejection of that claim on the merits. And the remaining two ineffective assistance claims, both were adjudicated on prejudice and that decision cannot be determined unreasonable. All right. Thank you, Mr. Frederick. Mr. Wright for rebuttal. Thank you, Your Honor. I'd like to first address the question of or the issue whether the other state habeas experts added anything to Dr. Ray's report. We know from previous arguments, and I don't think it's disputed, that Dr. Ray did not perform a psychiatric interview. Her report makes a few narrative statements, but there's no she didn't review family records. She didn't talk to family members. She didn't do any of the work that would have gone into a psychiatric interview. And for that reason, her report is not adequate. And I would cite for that point the Rompia case. Because in Rompia, the defense lawyers, the trial lawyers, actually had three mental health experts who testified. And the Supreme Court said that was not sufficient because of other red flags that appeared in the record that they didn't track down. So the fact that there may have been one expert, in this case Dr. Ray, who gave a small report based on a two-hour interview, she did two things. She had a two-hour interview with Ms. Shepard, and she reviewed the medical records from the Harris County Jail for the time period when Ms. Shepard was there. And that's all she did. And she explained in her affidavit in state habeas why she did that. The referral was so limited that she didn't feel it was necessary to do anything more. But I would refer your honors to the report and our discussion of it from Dr. Myla Young, the neuropsychologist, who spent 18 hours with Ms. Shepard and performed a number of neuropsychological tests on her. She is the neuropsychologist who opined that Ms. Shepard's mental age equivalence is 14 years. She went ahead to say that the brain dysfunction that Ms. Shepard experiences is greater than can be accounted for by her limited general mental ability alone. She goes into great detail on that. She talks about Ms. Shepard's vulnerabilities, that she would be vulnerable to responding in a non-thinking, automaton-like way rather than as a thinking and reasoning adult. Once action is initiated, her ability to reevaluate, anticipate consequences, and change her actions would also be impaired. This is so much beyond what Dr. Ray did because Dr. Ray was not asked to do it. This is the type of information that we believe Strickland, Rompea, Wiggins, Williams, they require that. Once counsel is on notice that these issues are out there, they're obliged to follow up and they're obliged to at least investigate until they've made a strategic judgment that further investigation is not necessary. That is what did not happen in this case. The next point I'd like to address concerns all of this discussion that counsel had previously on this duress issue. I think it's important. This highlights the Supreme Court's holding in Wilson v. Sellers. The Court of Criminal Appeals did not address or state anything about duress in its opinion, rejecting the state trial court's recommendation. The basis for that opinion is that the evidence that was submitted in state habeas was merely cumulative. What counsel has spun out, and I don't say that in a disparaging way, what counsel has addressed really is more appropriate, I believe, under Neal v. Puckett analysis where you could say this argument could have supported the decision. Well, that's not viable anymore after Wilson v. Sellers. Wilson v. Sellers says the court's to train its eye on the reasons stated in the last reasoned opinion by the state court and defer to them if they are reasonable and not to defer to them if they're not. So our view, and we've stated this in our filings to the court, our letter advisories on Wilson v. Sellers, our view is that duress is not an issue because the Court of Criminal Appeals did not make a ruling that addressed it in any way. And that's really the Neal issue. And, Your Honor, I will review the Adekaye case if that's how you say it, but what I was thinking of when you were asking about prejudice, Judge Smith, was the Strickland standard, and that's what I had my mind focused on. And what Strickland says is that prejudice is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. And that's what I had in my mind when you asked me that question. All right. Have you been able to cover everything on rebuttal that you wanted to? Yes, Your Honor. I think so. All right. Thank you, Mr. Wright. Your case is under submission. We notice, of course, that you're court appointed, and we wish to thank you for your willingness to take the appointment and for your good, hard work on behalf of your client. Thank you, Your Honor. I appreciate that. The court is in recess under the usual order. Thank you.